UNITED STATES DISTRICT COURT
DISTRICT FOR RHODE ISLAND

CA 08 300ML

THE UNITED STATES OF AMERICA,

Plaintiff,

v.

F/V IRON HORSE, Official No. 533196, her engines, tackle, boilers, permits, appurtenances, etc., *in rem* ,

F/V BRIANA NICOLE, Official No. 687824, her engines, tackle, boilers, permits, appurtenances, etc., *in rem* ,

BREEZY FISHERIES, INC., TB FISHERIES, INC., JAMES O'GRADY and TRACEY O'GRADY *in personam*,

Defendants.

CIVIL ACTION NO. ____

AT LAW AND IN ADMIRALTY

**VERIFIED COMPLAINT FOR FORECLOSURE OF PREFERRED SHIP MORTGAGES AND FOR MONEY DUE ON PROMISSORY NOTES AND PERSONAL GUARANTIES**

For its Verified Complaint, plaintiff, the United States of America, alleges upon information and belief, as follows:

1. This is a case within the admiralty and maritime jurisdiction of this court, as hereinafter more fully appears, and plaintiff's claim is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

2. Plaintiff is the United States of America, a sovereign nation authorized to sue under the provisions of 28 U.S.C. § 1345.

3. Defendant Breezy Fisheries, Inc. is, or at all material times was, a corporation organized and existing under the laws of the State of Rhode Island with an office or place of business within this district and does, or at all material times did, business within the district and within the jurisdiction of this honorable Court.

4. Defendant TB Fisheries, Inc. is, or at all material times was, a corporation organized and existing under the laws of the State of Rhode Island with an office or place of business within this district and does, or at all material times did, business within the district and within the jurisdiction of this honorable Court.

5. Defendants James O'Grady and Tracey O'Grady each reside within this district or do, or at all material times did, business within the jurisdiction of this Honorable Court. They are owners, shareholders, officers, directors and/or agents of Breezy Fisheries, Inc. and TB Fisheries, Inc.

6. At all times hereinafter mentioned, the defendant vessel, F/V BRIANA NICOLE, Official No. 687824, her engines, tackle, boilers, permits (including but not limited to Federal Fisheries Permit No. 410384), cargoes, inventories, supplies, appurtenances, etc., was a documented vessel of the United States is now or will be within this District and the jurisdiction of this Honorable Court.

7. At all times hereinafter mentioned, the defendant vessel, F/V IRON HORSE, Official No. 533196, her engines, tackle, boilers, permits (including but not limited to Federal Fisheries Permit No. 330155), cargoes, inventories, supplies, appurtenances, etc., was a documented vessel of the United States and is now or will be within this District and the jurisdiction of this Honorable Court.

8. TB Fisheries, Inc. is, or at all material times was, a citizen of the United States.

9. Subject to the Preferred Ship Mortgages, TB Fisheries, Inc., is, or at all material times was, the owner of the F/V BRIANA NICOLE.

10. Breezy Fisheries, Inc., is, or at all material times was, a citizen of the United States.

11. Subject to the Preferred Ship Mortgage, Breezy Fisheries, Inc., is, or at all material times was, the owner of the F/V IRON HORSE.

FIRST CAUSE OF ACTION FOR FORECLOSURE ON THE BRIANA NICOLE

12. Plaintiff realleges paragraphs 1 through 11 of this Complaint with the same force and effect as if set forth hereafter.

13. On October 4, 2006, TB Fisheries, Inc. (hereinafter "TB"), by James O'Grady, its authorized representative, duly made, executed, and delivered to plaintiff a promissory note for $1,070,000.00 bearing interest at the rate of 6.74 percent per annum as set forth therein (the BRIANA NICOLE Promissory Note), and duly executed, acknowledged, and delivered to plaintiff a first preferred ship mortgageon the BRIANA NICOLE (the BRIANA NICOLE Mortgage) as security for payment of the BRIANA NICOLE Promissory Note and any other sum paid by plaintiff to or for the account of TB. Copies of the BRIANA NICOLE Promissory Note and the BRIANA NICOLE Mortgage, designated as Exhibits A and B, respectively, are attached hereto and incorporated herein as though fully set forth.

14. Also on October 4, 2006, and as security for repayment of the BRIANA NICOLE Promissory Note, TB, by James O'Grady, duly made, executed, and delivered to plaintiff a Security Agreement on the BRIANA NICOLE . A copy of the BRIANA NICOLE Security Agreement, designated as Exhibit C, is attached hereto and incorporated herein as though fully set forth.

15. Also on October 4, 2006, and as further security for repayment of the BRIANA NICOLE Promissory Note, TB Fisheries, Inc., by James O'Grady, its authorized representative, duly made, executed, and delivered to plaintiff a UCC-1 instrument filed and recorded in the State of Rhode Island. A copy of the UCC-1, designated as Exhibit D, is attached hereto and incorporated herein as though fully set forth.

16. The BRIANA NICOLE Mortgage was duly recorded on October 5, 2006, at 11:50 a.m. at the office of the United States Coast Guard in Batch 542129, Doc Id 6151964. A copy of the General Index or Abstract of Title showing the recording of the BRIANA NICOLE

Mortgage, designated as Exhibit E, is attached hereto and incorporated herein as though fully set forth.

17. The plaintiff has performed all steps required to create a Preferred Ship Mortgage lien on the BRIANA NICOLE and has not waived the preferred status of the BRIANA NICOLE Mortgage.

18. TB failed to comply with the provisions of the BRIANA NICOLE Promissory Note and the BRIANA NICOLE Mortgage by failing to make agreed upon payments of principal and interest, each such failure being an event of default under Article II, Section 1, of the BRIANA NICOLE Mortgage.

19. By reason of TB's default, plaintiff, in accordance with the provisions of the BRIANA NICOLE Promissory Note and the BRIANA NICOLE Mortgage, elected to and did declare the entire balance of TB's obligations thereunder accelerated and immediately due and payable, and made demand upon TB for payment of that balance. A true and correct copy of plaintiff's notice of acceleration and demand, designated as Exhibit F, is attached hereto and incorporated herein as though fully set forth.

20. TB has failed to pay to plaintiff the amounts duly demanded, or any other sum.

21. Plaintiff has performed all promises and conditions incumbent upon it to perform under the various agreements set forth herein except as prevented from doing so by TB's acts or omissions.

22. On the BRIANA NICOLE Promissory Note and the BRIANA NICOLE Mortgage there is currently due, owing, and unpaid, from TB to plaintiff, over and above all just credits and offsets, the sum of $1,145,771.35, plus interest accruing from May 15, 2008, at the per diem rate of $565.04, being interest on $1,145,771.35 at the default rate of 18 percent per annum as set forth in Article II, Section 2(a) and Article I, Section 8 of the BRIANA NICOLE Mortgage. A copy of the accounting is attached to Exhibit F and incorporated herein as though fully set forth.

23. After May 15, 2008, and during the pendency of this action, plaintiff may pay insurance premiums and other vessel care and preservation costs, for which TB will also be liable under Article II, Section 8 of the BRIANA NICOLE Mortgage, together with interest thereon from the date of payment at the default rate of 18 percent per annum.

24. TB is also liable to plaintiff under the BRIANA NICOLE Promissory Note and the BRIANA NICOLE Mortgage for all reasonable attorneys' fees, costs, and expenses incurred by plaintiff in the prosecution of this action.

25. By reason of plaintiff's preferred ship mortgage lien on the defendant BRIANA NICOLE , the BRIANA NICOLE is liable to plaintiff for TB's BRIANA NICOLE Mortgage debt, including all sums for which TB is liable to plaintiff under the Promissory Note to the United States of America and the BRIANA NICOLE Mortgage.

26. The defendant BRIANA NICOLE has failed to pay plaintiff the BRIANA NICOLE Mortgage debt, which is in default, or any other amount.

27. Plaintiff is entitled to a first payment priority from the defendant BRIANA NICOLE, and its sale proceeds, for any and all fees, costs, and expenses incurred by plaintiff for the care, prevention, and sale of the defendant BRIANA NICOLE for which the BRIANA NICOLE and its proceeds are liable while in *custodia legis*.

28. Plaintiff is entitled to foreclose the BRIANA NICOLE First Mortgage, and to have the defendant BRIANA NICOLE sold and the proceeds of sale, net of all fees, costs, and expenses for care, prevention, and sale of the BRIANA NICOLE while in *custodia legis*, applied to payment of the First Mortgage debt.

SECOND CAUSE OF ACTION FOR FORECLOSURE ON THE IRON HORSE

29. On October 4, 2006, Breezy Fisheries, Inc. (hereinafter "Breezy"), by James O'Grady, its authorized representative, duly made, executed, and delivered to plaintiff a promissory note for $370,000.00 bearing interest at the rate of 6.74 percent per annum as set forth therein (the "IRON HORSE Promissory Note"), and duly executed, acknowledged, and

delivered to plaintiff a preferred ship mortgage (the "IRON HORSE Mortgage") on the IRON HORSE as security for payment of the First Promissory Note and any other sum paid by plaintiff to or for the account of Breezy. Copies of the IRON HORSE Promissory Note and the IRON HORSE Mortgage, designated as Exhibit G and H, respectively, are attached hereto and incorporated herein as though fully set forth.

30. Also on October 4, 2006, and as security for repayment of the IRON HORSE Promissory Note, Breezy, by James O'Grady, duly made, executed, and delivered to plaintiff a Security Agreement on the IRON HORSE. A copy of the IRON HORSE Security Agreement, designated as Exhibit I, is attached hereto and incorporated herein as though fully set forth.

31. Also on October 4, 2006, and as further security for repayment of the IRON HORSE Promissory Note, Breezy, by James O'Grady, duly made, executed, and delivered to plaintiff a UCC-1 instrument filed and recorded in the State of Rhode Island. A copy of the UCC-1, designated as Exhibit J, is attached hereto and incorporated herein as though fully set forth.

32. The IRON HORSE Mortgage was duly recorded on October 5, 2006, at 1:44 p.m. at the office of the United States Coast Guard in batch 542116, Doc Id 6151333. A copy of the General Index or Abstract of Title showing the recording of the IRON HORSE Mortgage, designated as Exhibit K, is attached hereto and incorporated herein as though fully set forth.

33. The plaintiff has performed all steps required to create a Preferred Ship Mortgage lien on the IRON HORSE and has not waived the preferred status of the Mortgage.

34. Breezy failed to comply with the provisions of the IRON HORSE Promissory Note and the IRON HORSE Mortgage by failing to make agreed upon payments of principal and interest, each such failure being an event of default under Article II, Section 1, of the IRON HORSE Mortgage.

35. By reason of Breezy's default, plaintiff in accordance with the provisions of the IRON HORSE Promissory Note and the IRON HORSE Mortgage, elected to and did declare the entire balance of Breezy's obligations thereunder accelerated and immediately due and payable,

and made demand upon Breezy for payment of that balance. A true and correct copy of plaintiff's notice of acceleration and demand, designated as Exhibit L, is attached hereto and incorporated herein as though fully set forth.

36. Breezy has failed to pay to plaintiff the amounts duly demanded, or any other sum.

37. Plaintiff has performed all promises and conditions incumbent upon it to perform under the various agreements set forth herein except as prevented from doing so by Breezy's acts or omissions.

38. On the IRON HORSE Promissory Note and the IRON HORSE Mortgage there is currently due, owing, and unpaid, from Breezy to plaintiff, over and above all just credits and offsets, the sum of $360,751.00, plus interest accruing from June 18, 2008, at the per diem rate of $177.90, being interest on $360,751.00 at the default rate of 18 percent per annum as set forth in Article II, Section 2(a) and Article I, Section 8 of the IRON HORSE Mortgage. A copy of the accounting is attached to Exhibit L and incorporated herein as though fully set forth.

39. After June 18, 2008, and during the pendency of this action, plaintiff may pay insurance premiums and other vessel care and preservation costs, for which Breezy will also be liable under Article II, Section 8 of the IRON HORSE Mortgage, together with interest thereon from the date of payment at the default rate of 18 percent per annum.

40. Breezy is also liable to plaintiff under the IRON HORSE Promissory Note and the IRON HORSE Mortgage for all reasonable attorneys' fees, costs, and expenses incurred by plaintiff in the prosecution of this action.

41. By reason of plaintiff's preferred ship mortgage lien on the defendant IRON HORSE, the IRON HORSE is liable to plaintiff for Breezy's IRON HORSE Mortgage debt, including all sums for which Breezy is liable to plaintiff under the IRON HORSE Promissory Note to the United States of America and the IRON HORSE Mortgage.

42. The defendant IRON HORSE has failed to pay plaintiff the IRON HORSE Mortgage debt, which is in default, or any other amount.

43. Plaintiff is entitled to a first payment priority from the defendant IRON HORSE, and its sale proceeds, for any and all fees, costs, and expenses incurred by plaintiff for the care, prevention, and sale of the defendant vessel for which the IRON HORSE and its proceeds are liable while in *custodia legis*.

44. Plaintiff is entitled to foreclose the IRON HORSE Mortgage and to have the defendant IRON HORSE sold and the proceeds of sale, net of all fees, costs, and expenses for care, prevention, and sale of the said vessel while in *custodia legis*, applied to payment of the IRON HORSE Mortgage debt, as amended.

<u>THIRD CAUSE OF ACTION FOR FORECLOSURE ON THE BRIANA NICOLE</u>

45. Plaintiff repeats and realleges paragraphs 1 through 28 of this Complaint with the same force and effect as if hereinafter set forth.

46. Also on October 4, 2006, TB, by James O'Grady, duly made, executed, and delivered to plaintiff a Guaranty Agreement by which it unconditionally guaranteed the $370,000.00 debt undertaken by Breezy (the "TB Guaranty"). TB also duly executed, acknowledged, and delivered to plaintiff a second preferred ship mortgage on the BRIANA NICOLE (the "BRIANA NICOLE Second Mortgage") as security for payment of the $370,000 debt on the IRON HORSE and any other sum paid by plaintiff to or for the account of Breezy. Copies of the TB Guaranty and the BRIANA NICOLE Second Mortgage, designated as Exhibit M and N, respectively, are attached hereto and incorporated herein as though fully set forth.

47. Also on October 4, 2006, and as security for repayment of the TB Guaranty, TB, by James O'Grady, duly made, executed, and delivered to plaintiff a Security Agreement on the BRIANA NICOLE. A copy of the Security Agreement, designated as Exhibit O, is attached hereto and incorporated herein as though fully set forth.

48. Also on October 4, 2006, and as further security for repayment of the TB Guaranty and BRIANA NICOLE Second Mortgage, TB, by James O'Grady, duly made, executed, and delivered to plaintiff a UCC-1 instrument filed and recorded in the State of Rhode Island. A

copy of the UCC-1, designated as Exhibit P, is attached hereto and incorporated herein as though fully set forth.

49. The BRIANA NICOLE Second Mortgage was duly recorded on October 5, 2006, at 11:50 a.m. at the office of the United States Coast Guard in Batch 542130, Doc Id 6151985. A copy of the General Index or Abstract of Title showing the recording of the BRIANA NICOLE Second Mortgage, designated as Exhibit E, is attached hereto and incorporated herein as though fully set forth.

50. The plaintiff has performed all steps required to create a Preferred Ship Mortgage lien on the BRIANA NICOLE and has not waived the preferred status of the BRIANA NICOLE Second Mortgage.

51. TB failed to comply with the provisions of the TB Guaranty and the BRIANA NICOLE Second Mortgage by failing to make agreed upon payments of principal and interest, each such failure being an event of default under Article II, Section 1, of the BRIANA NICOLE Second Mortgage.

52. By reason of TB's default under the BRIANA NICOLE Second Mortgage, plaintiff in accordance with the provisions of the BRIANA NICOLE Second Mortgage, elected to and did declare the entire balance of TB's obligations under the BRIANA NICOLE Second Mortgage accelerated and immediately due and payable, and made demand upon TB for payment of that balance. A true and correct copy of plaintiff's notice of acceleration and demand, designated as Exhibit Q, is attached hereto and incorporated herein as though fully set forth.

53. TB has failed to pay to plaintiff the amounts duly demanded, or any other sum.

54. Plaintiff has performed all promises and conditions incumbent upon it to perform under the various agreements by which TB guaranteed the $370,000 loan to Breezy, except as prevented from doing so by TB's acts or omissions.

55. On the BRIANA NICOLE Second Mortgage there is currently due, owing, and unpaid, from TB to plaintiff, over and above all just credits and offsets, the sum of $360,751.00,

plus interest accruing from June 18, 2008, at the per diem rate of $177.90, being interest on $360,751.00 at the default rate of 18 percent per annum as set forth in Article II, Section 2(a) and Article I, Section 8 of the BRIANA NICOLE Second Mortgage. A copy of the accounting is attached to Exhibit Q and incorporated herein as though fully set forth.

56. After June 18, 2008, and during the pendency of this action, plaintiff may pay insurance premiums and other vessel care and preservation costs, for which TB will also be liable under Article II, Section 8 of the BRIANA NICOLE Second Mortgage, together with interest thereon from the date of payment at the default rate of 18 percent per annum.

57. TB is also liable to plaintiff under the BRIANA NICOLE Second Mortgage for all reasonable attorneys' fees, costs, and expenses incurred by plaintiff in the prosecution of this action.

58. By reason of plaintiff's second preferred ship mortgage lien on the defendant BRIANA NICOLE, the BRIANA NICOLE is liable to plaintiff for the BRIANA NICOLE Second Mortgage debt, including all sums for which TB is liable to plaintiff under its Guaranty Agreement and the BRIANA NICOLE Second Mortgage.

59. The defendant BRIANA NICOLE has failed to pay plaintiff the BRIANA NICOLE Second Mortgage debt, which is in default, or any other amount.

60. Plaintiff is entitled to a first payment priority from the defendant BRIANA NICOLE, and its sale proceeds, for any and all fees, costs, and expenses incurred by plaintiff for the care, prevention, and sale of the defendant BRIANA NICOLE for which the BRIANA NICOLE and its proceeds are liable while in *custodia legis*.

61. Plaintiff is entitled to foreclose the BRIANA NICOLE Second Mortgage and to have the defendant BRIANA NICOLE sold and the proceeds of sale, net of all fees, costs, and expenses for care, prevention, and sale of the BRIANA NICOLE while in *custodia legis*, applied to payment of the BRIANA NICOLE Second Mortgage debt.

FOURTH CAUSE OF ACTION FOR FORECLOSURE ON THE IRON HORSE

62. Plaintiff repeats and realleges paragraphs 1 through 11 and 29 through 44 of this Complaint with the same force and effect as if hereinafter set forth.

63. Also on October 4, 2006, Breezy, by James O'Grady, duly made, executed, and delivered to plaintiff a Guaranty Agreement by which it unconditionally guaranteed the $1,070,000.00 debt undertaken by TB (the "Breezy Guaranty"). Breezy also duly executed, acknowledged, and delivered to plaintiff a second preferred ship mortgage on the IRON HORSE (the "IRON HORSE Second Mortgage") as security for payment of the $1,070,000 debt on the BRIANA NICOLE and any other sum paid by plaintiff to or for the account of TB. Copies of the Breezy Guaranty and the IRON HORSE Second Mortgage, designated as Exhibit R and S, respectively, are attached hereto and incorporated herein as though fully set forth.

64. Also on October 4, 2006, and as security for repayment of the Breezy Guaranty and the IRON HORSE Second Mortgage, Breezy, by James O'Grady, duly made, executed, and delivered to plaintiff a Security Agreement on the IRON HORSE. A copy of the Security Agreement, designated as Exhibit T, is attached hereto and incorporated herein as though fully set forth.

65. Also on October 4, 2006, and as further security for repayment of the IRON HORSE Second Mortgage, Breezy, by James O'Grady, duly made, executed, and delivered to plaintiff a UCC-1 instrument filed and recorded in the State of Rhode Island. A copy of the UCC-1, designated as Exhibit U is attached hereto and incorporated herein as though fully set forth.

66. The IRON HORSE Second Mortgage was duly recorded on October 5, 2006, at 1:44 p.m. at the office of the United States Coast Guard in batch 542117, Doc Id 6151340. A copy of the General Index or Abstract of Title showing the recording of the IRON HORSE Second Mortgage, designated as Exhibit K, is attached hereto and incorporated herein as though fully set forth.

67. The plaintiff has performed all steps required to create a Preferred Ship Mortgage lien on the IRON HORSE and has not waived the preferred status of the IRON HORSE Second Mortgage.

68. Breezy failed to comply with the provisions of the Breezy Guaranty and the IRON HORSE Second Mortgage by failing to make agreed upon payments of principal and interest, each such failure being an event of default under Article II, Section 1, of the IRON HORSE Second Mortgage.

69. By reason of Breezy's default, plaintiff, in accordance with the provisions of the IRON HORSE Second Mortgage, elected to and did declare the entire balance of Breezy's obligations under the IRON HORSE Second Mortgage accelerated and immediately due and payable, and made demand upon Breezy for payment of that balance. A true and correct copy of plaintiff's notice of acceleration and demand, designated as Exhibit V, is attached hereto and incorporated herein as though fully set forth.

70. Breezy has failed to pay to plaintiff the amounts duly demanded, or any other sum.

71. Plaintiff has performed all promises and conditions incumbent upon it to perform under the various agreements by which Breezy guaranteed the $1,070,000 loan to TB, except as prevented from doing so by Breezy's acts or omissions.

72. On the IRON HORSE Second Mortgage there is currently due, owing, and unpaid, from Breezy to plaintiff, over and above all just credits and offsets, the sum of $1,145,771.35, plus interest accruing from May 15, 2008, at the per diem rate of $565.04, being interest on $1,145,771.35 at the default rate of 18 percent per annum as set forth in Article II, Section 2(a) and Article I, Section 8 of the IRON HORSE Second Mortgage. A copy of the accounting is attached to Exhibit V and incorporated herein as though fully set forth.

73. After May 15, 2008, and during the pendency of this action, plaintiff may pay insurance premiums and other vessel care and preservation costs, for which Breezy will also be

liable under Article II, Section 8 of the IRON HORSE Second Mortgage, together with interest thereon from the date of payment at the default rate of 18 percent per annum.

74. Breezy is also liable to plaintiff under the Breezy Guaranty and the IRON HORSE Second Mortgage for all reasonable attorneys' fees, costs, and expenses incurred by plaintiff in the prosecution of this action.

75. By reason of plaintiff's second preferred ship mortgage lien on the defendant IRON HORSE, the IRON HORSE is liable to plaintiff for the IRON HORSE Second Mortgage debt, including all sums for which Breezy is liable to plaintiff under the Breezy Guarantee and the IRON HORSE Second Mortgage.

76. The defendant IRON HORSE has failed to pay plaintiff the IRON HORSE Second Mortgage debt, which is in default, or any other amount.

77. Plaintiff is entitled to a first payment priority from the defendant IRON HORSE, and its sale proceeds, for any and all fees, costs, and expenses incurred by plaintiff for the care, prevention, and sale of the defendant IRON HORSE for which the IRON HORSE and its proceeds are liable while in *custodia legis*.

78. Plaintiff is entitled to foreclose the IRON HORSE Second Mortgage, and to have the defendant IRON HORSE sold and the proceeds of sale, net of all fees, costs, and expenses for care, prevention, and sale of the said vessel while in *custodia legis*, applied to payment of the IRON HORSE Second Mortgage debt.

## FIFTH CAUSE OF ACTION FOR MONEY DUE ON GUARANTIES

79. Plaintiff repeats and realleges paragraphs 1 through 78 of this Complaint with the same force and effect as if hereinafter set forth.

80. Also on October 4, 2006, defendants James O'Grady and Tracey O'Grady each executed and delivered to plaintiff an unconditional, joint and several personal guarantee that Breezy would perform on the IRON HORSE First Promissory Note and the IRON HORSE First Mortgage. Copies of the James O'Grady and Tracey O'Grady IRON HORSE Guaranty

Agreements, designated as Exhibits W and X, respectively, are attached hereto and incorporated herein as though fully set forth.

81. James O'Grady and Tracey O'Grady failed to comply with the provisions of their respective IRON HORSE Guaranty Agreements, and are thereby in breach thereof, by failing to pay the balance due on the IRON HORSE First Promissory Note and the IRON HORSE First Mortgage when Breezy failed to do so.

82. Plaintiff made demand upon James O'Grady and Tracey O'Grady for payment of the aforesaid balance. Copies of the plaintiffs demands for payment from James O'Grady and Tracey O'Grady, designated as Exhibits Y and Z, respectively, are attached hereto and incorporated herein as though fully set forth.

83. Plaintiff has not been paid the amounts duly demanded, or any other sum.

84. Plaintiff has performed all promises and conditions incumbent upon it to perform under the various agreements set forth herein except as prevented from doing so by acts or omissions of James O'Grady and Tracey O'Grady .

85. There is currently due, owing, and unpaid, from James O'Grady and Tracey O'Grady on their IRON HORSE Guaranty Agreements to plaintiff, over and above all just credits and offsets, the sum of $360,751.00, plus interest accruing from June 18, 2008, at the per diem rate of $177.90, being interest on $360,751.00 at the default rate of 18 percent per annum as set forth in Article II, Section 2(a) and Article I, Section 8 of the IRON HORSE First Mortgage. A copy of the accounting is attached to Exhibits Y and Z and incorporated herein as though fully set forth.

86. James O'Grady and Tracey O'Grady are liable for all insurance premiums and other vessel care and preservation costs paid by the plaintiff after June 18, 2008, together with interest thereon from the date of payment at the IRON HORSE Mortgage's default rate of 18 percent per annum.

87. James O'Grady and Tracey O'Grady are also liable to plaintiff under their IRON HORSE Guaranty Agreements for all reasonable attorneys' fees, costs, and expenses incurred by plaintiff in the prosecution of this action.

SIXTH CAUSE OF ACTION FOR MONEY DUE ON GUARANTIES

88. Plaintiff repeats and re-alleges paragraphs 1 through 87 of this Complaint with the same force and effect as if hereinafter set forth.

89. Also on October 4, 2006, defendants James O'Grady and Tracey O'Grady each executed and delivered to plaintiff an unconditional, joint and several personal guarantee that TB would perform on the BRIANA NICOLE Promissory Note and the BRIANA NICOLE Mortgage. Copies of the James O'Grady, and Tracey O'Grady BRIANA NICOLE Guaranty Agreements, designated as Exhibits AA and BB, respectively, are attached hereto and incorporated herein as though fully set forth.

90. James O'Grady and Tracey O'Grady failed to comply with the provisions of their BRIANA NICOLE Guaranty Agreements, and are thereby in breach thereof, by failing to pay the balance due on the BRIANA NICOLE Promissory Note and the BRIANA NICOLE Mortgage when TB failed to do so.

91. Plaintiff made demand upon James O'Grady and Tracey O'Grady for payment of the aforesaid balance. Copies of the plaintiffs demands for payment from James O'Grady and Tracey O'Grady, designated as Exhibits CC and DD, respectively, are attached hereto and incorporated herein as though fully set forth.

92. Plaintiff has not been paid the amounts duly demanded, or any other sum.

93. Plaintiff has performed all promises and conditions incumbent upon it to perform under the various agreements set forth herein except as prevented from doing so by acts or omissions of James O'Grady and Tracey O'Grady .

94. There is currently due, owing, and unpaid, from James O'Grady and Tracey O'Grady on their respective BRAINA NICOLE Guaranty Agreements to plaintiff, over and above all just

credits and offsets, the sum of $1,145,771.35, plus interest accruing from May 15, 2008, at the per diem rate of $565.04, being interest on $1,145,771.35 at the default rate of 18 percent per annum as set forth in Article II, Section 2(a) and Article I, Section 8 of the BRIANA NICOLE Mortgage. A copy of the accounting is attached to Exhibits CC and DD and incorporated herein as though fully set forth.

95. James O'Grady and Tracey O'Grady are liable for all insurance premiums and other vessel care and preservation costs paid by the plaintiff after June 18, 2008, together with interest thereon from the date of payment at the BRIANA NICOLE Mortgage default rate of 18 percent per annum.

96. James O'Grady and Tracey O'Grady are also liable to plaintiff under their respective BRIANA NICOLE Guaranty Agreements for all reasonable attorneys' fees, costs, and expenses incurred by plaintiff in the prosecution of this action.

WHEREFORE, Plaintiff, United States of America, prays:

(1) That actual notice of the commencement of this action be given to the master, ranking officer, or caretaker of the defendant BRIANA NICOLE and to any person, firm or corporation with a recorded notice of claim or an undischarged lien as to the defendant BRIANA NICOLE;

(2) That pursuant to Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Honorable Court enter an order authorizing a warrant for the arrest of the defendant BRIANA NICOLE her engines, tackle, boilers, permits(including but not limited to Federal Fisheries Permit No. 410384), cargoes, inventories, supplies, appurtenances, etc., whether now owned or hereafter acquired, whether on board or not, whether removed from the BRIANA NICOLE, lawfully or unlawfully, or remaining aboard, and all additions, improvements, renewals, and replacements made to the BRIANA NICOLE.

(3) That a warrant be issued for the arrest of the defendant BRIANA NICOLE her engines, tackle, boilers, permits (including but not limited to Federal Fisheries Permit No. 410384), cargoes, inventories, supplies, appurtenances, etc., whether now owned or hereafter

acquired, whether on board or not, whether removed from the BRIANA NICOLE, lawfully or unlawfully, or remaining aboard, and all additions, improvements, renewals, and replacements made to said BRIANA NICOLE, with notice to all persons claiming any interest whatsoever in the defendant BRIANA NICOLE to appear and file a claim and answer this Complaint;

(4) That the U.S. Marshal immediately publish notice of the arrest of the BRIANA NICOLE, after waiting the ten (10) day period required to follow the arrest of a vessel, pursuant to the provisions of Supplemental Rules C (4) of the Supplemental Rules For Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

(5) That plaintiff be adjudged the holder of First and Second preferred ship mortgage liens on the defendant BRIANA NICOLE, to the extent of the First and Second Mortgage debts;

(6) That plaintiff be declared the holder of a valid security interest in all fish harvested by the BRIANA NICOLE and/or fish on board the BRIANA NICOLE, subject to the priorities of senior secured parties, if any;

(7) That the cargoes, inventories, and supplies of the BRIANA NICOLE be sold and the proceeds from the sale be applied first to crew wage claims (if any), preferred maritime liens, and then to the satisfaction of liens, against the cargoes, inventories, and supplies of the BRIANA NICOLE;

(8) That the defendant BRIANA NICOLE be adjudged liable to plaintiff for all amounts due plaintiff herein;

(9) That plaintiff be adjudged entitled to a first priority for payment from the defendant BRIANA NICOLE and its proceeds for all fees, costs, and expenses paid by plaintiff for care, preservation, and sale of the defendant BRIANA NICOLE while in *custodia legis*;

(10) That judgment of condemnation and sale be entered against the BRIANA NICOLE her engines, tackle, boilers, permits (including but not limited to Federal Fisheries Permit No. 410384), cargoes, inventories, supplies, appurtenances, etc., whether now owned or hereafter acquired, whether on board or not, whether removed from the BRIANA NICOLE, lawfully or

unlawfully, or remaining aboard, and all additions, improvements, renewals, and replacements made to the BRIANA NICOLE;

(11) That the defendant BRIANA NICOLE be sold and the sale confirmed;

(12) That the First and Second Mortgages be foreclosed and any person, firm or corporation claiming any interest as to the defendant BRIANA NICOLE be forever barred and foreclosed as to any right, equity or redemption, claim or lien on the BRIANA NICOLE or its sale proceeds;

(13) That the proceeds of sale of the defendant BRIANA NICOLE and of any other property of such absent defendant be disbursed and applied to pay the fees, costs, and expenses of this action and the amounts due plaintiff herein;

(14) That the proceeds, net to plaintiff, of sale of the defendant BRIANA NICOLE be credited against the amounts due plaintiff herein;

(15) That *in personam* defendant TB Fisheries, Inc., be adjudged liable to plaintiff for the BRIANA NICOLE Mortgage debt, including $1,145,771.35, plus interest accruing from May 15, 2008, at the per diem rate of $565.04, being interest on $1,145,771.35 at the default rate of 18 percent per annum and any and all sums expended by plaintiff for insurance premiums and other vessel care and preservation costs paid by the plaintiff after May 15, 2008, together with interest thereon from the date of payment at the BRIANA NICOLE Mortgage default rate of 18 percent per annum;

(16) That *in personam* defendant TB Fisheries, Inc., be adjudged liable to plaintiff for the BRIANA NICOLE Second Mortgage debt, including $360,751.00, plus interest accruing from June 18, 2008, at the per diem rate of $177.90, being interest on $360,751.00 at the default rate of 18 percent per annum and any and all sums expended by plaintiff for insurance premiums and other vessel care and preservation costs paid by the plaintiff after June 18, 2008, together with interest thereon from the date of payment at the BRIANA NICOLE Second Mortgage default rate of 18 percent per annum;

(17) That *in personam* defendants Breezy Fisheries, Inc., James O'Grady and Tracey O'Grady be adjudged jointly and severally liable to plaintiff on their BRIANA NICOLE Guaranty Agreements for the BRIANA NICOLE Mortgage debt, including $1,145,771.35, plus interest accruing from May 15, 2008, at the per diem rate of $565.04, being interest on $1,145,771.35 at the default rate of 18 percent per annum and any and all sums expended by plaintiff for insurance premiums and other vessel care and preservation costs paid by the plaintiff after May 15, 2008, together with interest thereon from the date of payment at the BRIANA NICOLE Mortgage default rate of 18 percent per annum.

(18) That actual notice of the commencement of this action be given to the master, ranking officer, or caretaker of the defendant IRON HORSE and to any person, firm or corporation with a recorded notice of claim or an undischarged lien as to the defendant IRON HORSE;

(19) That pursuant to Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Honorable Court enter an order authorizing a warrant for the arrest of the defendant IRON HORSE her engines, tackle, boilers, permits (including but not limited to Federal Fisheries Permit No. 330155), cargoes, inventories, supplies, appurtenances, etc., whether now owned or hereafter acquired, whether on board or not, whether removed from the IRON HORSE, lawfully or unlawfully, or remaining aboard, and all additions, improvements, renewals, and replacements made to the IRON HORSE.

(20) That a warrant be issued for the arrest of the defendant IRON HORSE her engines, tackle, boilers, permits(including but not limited to Federal Fisheries Permit No. 330155), cargoes, inventories, supplies, appurtenances, etc., whether now owned or hereafter acquired, whether on board or not, whether removed from the IRON HORSE, lawfully or unlawfully, or remaining aboard, and all additions, improvements, renewals, and replacements made to said IRON HORSE, with notice to all persons claiming any interest whatsoever in the defendant IRON HORSE to appear and file a claim and answer this Complaint;

(21) That the U.S. Marshal immediately publish notice of the arrest of the IRON HORSE, after waiting the ten (10) day period required to follow the arrest of a vessel, pursuant to the provisions of Supplemental Rules C (4) of the for Supplemental Rules Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure.

(22) That plaintiff be adjudged the holder of preferred ship mortgage liens on the defendant IRON HORSE, to the extent of the Fist and Second Mortgage debt;

(23) That plaintiff be declared the holder of a valid security interest in all fish harvested by the IRON HORSE and/or fish on board the IRON HORSE, subject to the priorities of senior secured parties, if any;

(24) That the cargoes, inventories, and supplies of the IRON HORSE be sold and the proceeds from the sale be applied first to crew wage claims (if any), preferred maritime liens, and then to the satisfaction of liens, against the cargoes, inventories, and supplies of the IRON HORSE;

(25) That the defendant IRON HORSE be adjudged liable to plaintiff for all amounts due plaintiff under the financial documents pertinent to the IRON HORSE;

(26) That plaintiff be adjudged entitled to a first priority for payment from the defendant IRON HORSE and its proceeds for all fees, costs, and expenses paid by plaintiff for care, preservation, and sale of the defendant IRON HORSE while *in custodia legis*;

(27) That judgment of condemnation and sale be entered against the IRON HORSE her engines, tackle, boilers, permits (including but not limited to Federal Fisheries Permit No. 330155), cargoes, inventories, supplies, appurtenances, etc., whether now owned or hereafter acquired, whether on board or not, whether removed from the IRON HORSE, lawfully or unlawfully, or remaining aboard, and all additions, improvements, renewals, and replacements made to the IRON HORSE;

(28) That the defendant IRON HORSE be sold and the sale confirmed;

(29) That the First and Second Mortgages be foreclosed and any person, firm or corporation claiming any interest as to the defendant IRON HORSE be forever barred and forecloses as to any right, equity or redemption, claim or lien on the IRON HORSE or its sale proceeds;

(30) That the proceeds of sale of the defendant IRON HORSE and of any other property of such absent defendant be disbursed and applied to pay the fees, costs, and expenses of this action and the amounts due plaintiff herein;

(31) That the proceeds, net to plaintiff, of sale of the defendant IRON HORSE and of any other property of such absent defendant be credited against the amounts due plaintiff herein;

(32) That *in personam* defendant Breezy Fisheries, Inc., be adjudged liable to plaintiff for the IRON HORSE First Mortgage debt, including $360,751.00, plus interest accruing from June 18, 2008, at the per diem rate of $177.90, being interest on $360,751.00 at the default rate of 18 percent per annum and any and all sums expended by plaintiff for insurance premiums and other vessel care and preservation costs paid by the plaintiff after June 18, 2008, together with interest thereon from the date of payment at the IRON HORSE First Mortgage default rate of 18 percent per annum.

(33) That *in personam* defendant Breezy Fisheries, Inc., be adjudged liable to plaintiff for the IRON HORSE Second Mortgage debt, including $1,145,771.35, plus interest accruing from May 15, 2008, at the per diem rate of $565.04, being interest on $1,145,771.35 at the default rate of 18 percent per annum and any and all sums expended by plaintiff for insurance premiums and other vessel care and preservation costs paid by the plaintiff after May 15, 2008, together with interest thereon from the date of payment at the IRON HORSE Second Mortgage default rate of 18 percent per annum.

(34) That *in personam* defendants TB Fisheries, Inc., James O'Grady and Tracey O'Grady be adjudged jointly and severally liable to plaintiff on their respective IRON HORSE Guaranty Agreements to plaintiff for the IRON HORSE Mortgage debt, including $360,751.00,

plus interest accruing from June 18, 2008, at the per diem rate of $177.90, being interest on $360,751.00 at the default rate of 18 percent per annum and any and all sums expended by plaintiff for insurance premiums and other vessel care and preservation costs paid by the plaintiff after June 18, 2008, together with interest thereon from the date of payment at the IRON HORSE First Mortgage default rate of 18 percent per annum.

(35) That if any *in personam* defendant cannot be found within this District, then that all of each such absent defendant's property of any description whatsoever, including other vessels, located within this District be attached for up to the amount sued for herein, and condemned and sold to pay the amounts due plaintiff herein, all in accordance with Supplementary Admiralty Rule B of the Federal Rules of Civil Procedure.

(36) That plaintiff receive reasonable attorneys' fees, costs, and expenses incurred in prosecuting this action, according to proof; and

(37) pursuant to 28 U.S.C. § 3011, that plaintiff receive a surcharge of 10 percent of the amount of the debt in connection with the recovery of the debt, to cover the cost of processing and handling this litigation and enforcement, and

(38) that plaintiff receive such other and further relief as this Court may deem just and proper.

Dated: August 5, 2008

Respectfully submitted,

GREGORY G. KATSOS
Assistant Attorney General

ROBERT CLARK CORRENTE
United States Attorney

PETER G. MYER
Admiralty Trial Attorney
U.S. Department of Justice
P.O. Box 14271
Washington, D.C. 20044-4271
202) 616-4043

Please serve:
F/V IRON HORSE

F/V BRIANA NICOLE

Breezy Fisheries, Inc., c/o James O'Grady at 288 Blackberry Hill Road, Wakefield, Rhode Island 02879

TB Fisheries, Inc., c/o James O'Grady at 288 Blackberry Hill Road, Wakefield, Rhode Island 02879

James O'Grady at 288 Blackberry Hill Road, Wakefield, Rhode Island 02879

Tracey O'Grady at 288 Blackberry Hill Road, Wakefield, Rhode Island 02879

VERIFICATION

Peter G. Myer deposes and says that:

I am an attorney employed in the Torts Branch, Civil Division, U.S. Department of Justice, and one of the attorneys for Plaintiff United States of America herein, and make this verification by authority of plaintiff and on its behalf. I have reviewed the foregoing Verified Complaint for Foreclosure of Preferred Ship Mortgage and Money Due on Promissory Notes and Guaranties, know the contents thereof, and from information officially furnished to me believe the same to be true.

In accordance with 28 U.S.C. § 1746(2) I verify under penalty of perjury that the foregoing is true and correct.

Executed this 5th day of August, 2008

PETER G. MYER

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was mailed, first class postage prepaid, this 5th day of August, 2008 to the following entities known to have liens on the defendant vessels F/V IRON HORSE and/or F/V BRIANA NICOLE:

Rhode Island Engine Co., Inc.
PO Box 543
Narragansett, Rhode Island 02882

Richard Boyle, Credit Manager
Santoro Oil Co., Inc.
101 Corliss Street
Providence, Rhode Island 02904

PETER G. MYER